```
         IN THE UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| JACQUELINE LOVE-SKINNER,<br><br>               Plaintiff,<br><br>    v.<br><br>CITY OF BRIDGETON, et al.,<br><br>               Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action No.<br>16-1937 (JBS-KMW)<br><br>**MEMORANDUM**<br>**OPINION** |

**SIMANDLE**, District Judge:

    1.   This matter comes before the Court by way of motion for summary judgment filed by Defendants City of Bridgeton, Officer Ronald Broomall, and Officer James Riley (hereinafter, collectively, "Defendants").[1] (See Motion for Summary Judgment [Docket Item 71].) The present motion is opposed by Plaintiff Jacqueline Love-Skinner. (See Plaintiff's Brief in Opposition to Motion for Summary Judgment (hereinafter "Pl.'s Opp'n") [Docket

---

[1] Defendants refer to themselves as "Defendants/Third Party Plaintiffs." (See, e.g., Defs.' Mot. [Docket Item 71].) Defendants filed a Third Party Complaint, [Docket Item 13], naming Lenora Adams as the sole Third Party Defendant. Summons was issued as to Ms. Adams on July 14, 2016 [Docket Item 16]. However, the docket does not reflect that Ms. Adams was ever served and it is unclear whether Defendants are still pursuing any claims against Ms. Adams. It does not appear that Ms. Adams is implicated by the present motion, except insofar as she was a participant in the incident that led to the police interaction with Plaintiff and a witness to that interaction.

Item 76].) Thereafter, Defendants filed a reply brief. (See Reply Brief (hereinafter "Defs.' Reply") [Docket Item 79].)

2. The Court has considered the submissions and held oral argument with regard to this motion on March 25, 2019. For the reasons set forth below, Defendants' motion for summary judgment [Docket Item 71] will be granted in part, denied in part, and dismissed as moot in part. The Court finds as follows:[2]

3. **Standard of Review.** At summary judgment, the moving party bears the initial burden of demonstrating that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once a properly supported motion for summary judgment is made, the burden shifts to the non-moving party, who must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). In reviewing a motion for summary judgment, the court is required to examine the evidence in light most favorable to the non-moving party and resolve all reasonable

---

[2] For purposes of the instant motion and pursuant to Local Civil Rule 56.1, the Court looks to Plaintiff's Complaint, [Docket Item 1], when appropriate, Defendants' Statement of Facts, [Docket Item 71-1], Plaintiff's Response to Defendants' Statement of Facts, [Docket Item 76-1], and related exhibits and documents. Where not otherwise noted, the facts are undisputed by the parties.

2

inferences in that party's favor. Scott v. Harris, 550 U.S. 372, 378 (2007); Halsey v. Pfeiffer, 750 F.3d 273, 287 (3d Cir. 2014).

4. A factual dispute is material when it "might affect the outcome of the suit under the governing law," and genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. The non-moving party "need not match, item for item, each piece of evidence proffered by the movant," but must present more than a "mere scintilla" of evidence on which a jury could reasonably find for the non-moving party. Boyle v. Cnty. of Allegheny, Pa., 139 F.3d 386, 393 (3d Cir. 1998) (quoting Anderson, 477 U.S. at 252).

5. **Discussion.** Defendants move for summary judgment on seven separate bases, (see Defs.' Br. [Docket Item 71-2]), each of which is discussed below.

    a. <u>Plaintiff has not shown any violation of her rights under 42 U.S.C. § 1983.</u> Defendants assert that they are entitled to summary judgment in their favor as to all claims under 42 U.S.C. § 1983, because Plaintiff has failed to show that she suffered a violation of her constitutional rights and that Defendant Broomall's use of force was reasonable under the circumstances. (Defs. Br. [Docket Item 71-2], 1-2.) Plaintiff responds that a genuine dispute of material fact exists as to this issue, because her expert opines that the alleged elbow strike to Plaintiff's neck was not reasonable under the circumstances. (Pl.'s Opp'n [Docket

3

Item 76], 4-5.) Taking the version of events in the light most favorable to Plaintiff, as the non-moving party, the Court finds that the facts as testified by Plaintiff and Plaintiff's expert's testimony as to the reasonableness of Defendant Broomall's alleged use of force against Plaintiff's neck creates a genuine dispute of material fact and therefore summary judgment is inappropriate at this time. This portion of Defendants' motion shall therefore be denied.

    i. *Amount of force used by Defendant Broomall was reasonable.* In this case, Plaintiff Love-Skinner has alleged a violation of her Fourth Amendment rights to be free of excessive force during the course of an arrest. (See Complaint [Docket Item 1], ¶¶ 24-27.) There are significant factual disputes about the exact amount and type of force used against Plaintiff and the events which led up to the use of force by Defendant Broomall in arresting Plaintiff. Plaintiff's version of events is as follows: as she was exiting her vehicle in an apartment complex parking lot, Love-Skinner was called an expletive word by Ms. Adams, a woman she had never met, for no apparent reason. (Love-Skinner Dep. [Docket Item 71-4 at 14-42] at 20:7-21:2.) The two women started fighting (Id. at 23-24:10) and, a few minutes later, Defendants Broomall and Riley arrived at the scene. (Id. at 25:1-7.) According to Plaintiff, neither officer told Plaintiff or Ms. Adams to stop fighting with each other. (Id. at 27:18-28:5.)

4

Instead, Defendant Broomall approached Plaintiff and, without warning, struck her from behind in the back of her neck with his elbow and Plaintiff fell to the ground, causing scarring to her face and a broken ankle. (Id. at 31:7-13.) As Love-Skinner was laying on the ground, Defendant Broomall handcuffed her, sprayed her in the face with mace, dragged her to the curb, and then sprayed her in the face with mace again. (Id. at 32:22-35:7.) At this point, Plaintiff was unable to see (id. at 35:8-9) and felt pain in her face, knees, and ankle. (Id. at 38:2-7.) Plaintiff Love-Skinner was subsequently arrested for fighting with Ms. Adams. (Id. at 36:2-4.) She was 53 years old at the time of the incident. (Pl.'s Opp'n [Docket Item 76] at 6.)

Under Graham v. Connor, 490 U.S. 386 (1989), a plaintiff has the burden of showing that the amount of force directed at him by an arresting officer was constitutionally excessive. What is "excessive" is determined under all the circumstances then confronting the arresting officer, considering the Graham factors, among others, namely: "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396. The Third Circuit expounded upon the Graham factors in Sharrar v. Felsing, 128 F.3d 810 (3d Cir. 1997), stating that

5

> [o]ther relevant factors include the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time.

Sharrar, 128 F.3d at 822.

In this case, taking the evidence in the light most favorable to Plaintiff, none of the Graham factors indicate that the claimed degree of force would have been reasonable under the circumstances, since Plaintiff was fighting with another woman, arguably in self-defense, the police never ordered the women to stop fighting, there is no evidence that Love-Skinner had a weapon, was threatening additional violence, or otherwise constituted a threat to anyone other than, perhaps, Ms. Adams, and Love-Skinner was not resisting arrest or attempting to evade the police. Likewise, taking the evidence in the light most favorable to Plaintiff, the Sharrar factors indicate that using substantial force against Plaintiff's neck would not have been reasonable under the circumstances, because, while Love-Skinner was acting violently toward Ms. Adams, there is no evidence that there was insufficient time for Defendant Broomall to have taken another, less violent course of action, there is no evidence that Love-Skinner was considered to be armed, nor is there evidence that Defendant Broomall was potentially overpowered or outnumbered. Therefore, taking the evidence in the

6

light most favorable to Plaintiff, the Court finds that material facts are in dispute and that a reasonable jury could find it was excessive for Defendant Broomall to strike Plaintiff from behind in the back of her neck and then, while she was laying on the ground, handcuff Love-Skinner, spray her in the face with pepper spray, drag her to the curb, and then spray her in the face with pepper spray again.

Plaintiff, as the party opposing summary judgment, is entitled to the facts and reasonable inferences most favorable to her. In Plaintiff's best case, a reasonable jury could find that she was admittedly fighting with Ms. Adams when police arrived, but that she never heard an officer tell her to stop, never threatened an officer, and never displayed something like a weapon. A reasonable jury could find that Defendant Broomall, without warning, elbowed Plaintiff in the neck, knocking her to the ground, and injuring her ankle, pepper sprayed her, dragged her to the curb, and pepper sprayed her again, in an effort to hurt her, and caused substantial injuries. Plaintiff put up no resistance but was allegedly still handled roughly by Defendant Shockley. When balanced against the fight for which Plaintiff was arrested, where Plaintiff was arguably defending herself and unaware she was about to be elbowed in the neck, knocked to the pavement, pepper sprayed, dragged to the curb, and pepper sprayed again, and was offering no resistance to the officer, a reasonable jury could find that

7

Defendant Shockley exercised a degree of force that was not only improper but unconstitutionally excessive. Under this version of the facts, a jury could reasonably find that this force was not for the purpose of arresting Plaintiff, but rather for the purpose of summarily punishing her for fighting with Ms. Adams. The Fourth Amendment permits the use of force, sometimes even deadly force, to accomplish an arrest in especially aggravated circumstances presenting demonstrable danger to the law enforcement officer or others. In Plaintiff's circumstances, looking at disputed evidence in the light most favorable to her for the purposes of this motion, a jury could reasonably find for Plaintiff. Therefore, Defendants' motion shall be denied to the extent that it seeks summary judgment with respect to the issue of excessive force.

      ii.   *Insufficient showing for failure to intervene claim against Defendant Riley*. The Third Circuit has stated, regarding bystander liability in an excessive force context that

> Courts have held that a police officer has a duty to take reasonable steps to protect a victim from another officer's use of excessive force, even if the excessive force is employed by a superior. "If a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983." Byrd v. Clark, 783 F.2d 1002, 1007 (11th Cir. 1986); accord Putman v. Gerloff, 639 F.2d 415, 423 (8th Cir. 1981); Byrd v. Brishke, 466 F.2d 6, 11 (7th Cir. 1972). However, an officer is only liable if there is a realistic and reasonable

8

> opportunity to intervene. See Clark, 783 F.2d at 1007 (instructing the district court upon remand to determine whether the officer was in a position to intervene); Brishke, 466 F.2d at 11 (liability for failure to intervene exists only if the beating occurred in the officer's presence or was otherwise within his knowledge); Putman, 639 F.2d at 423-24 (liability exists only if the non-intervening officer saw the beating or had time to reach the offending officer).

Smith v. Mensinger, 293 F.3d 641, 650-51 (3d Cir. 2002). Defendants argue that they are entitled to summary judgment in their favor regarding the claim for bystander liability against Defendant Riley because Plaintiff has failed to produce sufficient evidence to support such an allegation, primarily because Defendant Riley did not observe any of the interaction between Plaintiff and Defendant Broomall after Defendant Broomall's first use of his "OC spray," and therefore Defendant Riled did not have "a realistic and reasonable opportunity to intervene" to prevent the alleged violation of Plaintiff's constitutional rights. (See Defs. Br. [Docket Item 71-2], 3-6; Defs.' SMF [Docket Item 76-1], ¶¶ 49-56.) Plaintiff did not oppose this argument in her brief, (see generally Pl.'s Opp'n [Docket Item 76]), and appears to admit in her statement of facts that Defendant Riley did not observe Defendant Broomall's actions towards Plaintiff after the first deployment of "OC spray." (See Pl.'s SMF [Docket Item 76-1], ¶¶ 53-54.)

At oral argument, Plaintiff emphasized that the constitutional violation alleged is centered on the alleged use of

9

force against Plaintiff's neck, and Plaintiff conceded that, given the circumstances of the altercation between Plaintiff and Ms. Adams, a single use of "OC spray" against Plaintiff would not have been violative of Plaintiff's constitutional rights.

In sum, the Court has not been directed to any evidence on the record that Defendant Riley observed any use of force by Defendant Broomall except for a single application of "OC spray," and Plaintiff has conceded that such a single use of "OC spray" was not in itself a violation of Plaintiff's constitutional rights. Thus, no evidence has been presented to the Court that would satisfy Plaintiff's burden to prove that Defendant Riley had "a realistic and reasonable opportunity to intervene" to prevent the alleged violation of Plaintiff's constitutional rights, which is a necessary element of Plaintiff's claim for bystander liability. Therefore, Defendants' motion shall be granted with respect to this claim, in favor of Defendant Riley.

    b.   Qualified Immunity.

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." Taylor v. Barkes, 135 S. Ct. 2042, 2044 (2015) (internal citation and quotation marks omitted). "In resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry. The first asks whether the

facts, '[t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a [federal] right[.]'" Tolan v. Cotton, 572 U.S. 650, 655-56 (2014) (citing Saucier v. Katz, 533 U.S. 194, 201, (2001)). In this case, Plaintiff has alleged a violation of her Fourth Amendment right to be free of excessive force during the course of an arrest. (See Complaint, ¶¶ 24-27; see also Graham v. Connor, 490 U.S. 386, 393 (1989).) Plaintiff alleges that she was not told to stop fighting by either officer, that Defendant Broomall approached Plaintiff and, without warning, struck her from behind in the back of her neck with his elbow and Plaintiff fell to the ground, causing scarring to her face and a broken ankle. Plaintiff alleges that, as she was laying on the ground, Defendant Broomall handcuffed her, sprayed her in the face with pepper spray, dragged her to the curb, and then sprayed her in the face with pepper spray again. Taking these into account, in the light most favorable to Plaintiff, would show that Defendant Broomall violated the federal right to be free from excessive force in arrest, in violation of the Fourth Amendment.

The second prong of the qualified immunity inquiry requires the Court to determine

> whether the right in question was "clearly established" at the time of the violation. Hope v. Pelzer, 536 U.S. 730, 739, [] (2002). . . . "[T]he salient question . . . is whether the state of the law" at the time

of an incident provided "fair warning" to the
defendants "that their alleged [conduct] was
unconstitutional." Id. at 741.

Tolan, 572 U.S. at 655–56. Regarding claims of excessive force during the process of arrest, the Third Circuit has stated that

> we have relied on the factors set forth in Graham and Sharrar in evaluating whether an officer made a reasonable mistake. See Estate of Smith v. Marasco, 430 F.3d 140, 149-150 (3d Cir.2005); Couden v. Duffy, 446 F.3d 483, 497 (3d Cir.2006). We have stated that these factors "are well-recognized," Couden, 446 F.3d at 497, and that when an officer applies them in "an unreasonable manner, he is not entitled to qualified immunity." Estate of Smith, 430 F.3d at 150.

Green v. New Jersey State Police, 246 F. App'x 158, 162–63 (3d Cir. 2007). As the Court determined, supra, neither the Graham nor the Sharrar factors indicate that, taking the evidence in the light most favorable to Plaintiff, Defendant Broomall could not have reasonably believed that this alleged degree of force would have been reasonable under the circumstances in this case. Because the Court finds that "it would be unreasonable for [an officer] to believe these actions would not constitute excessive force, we hold that [Plaintiff's] rights were 'clearly established.'" Green, 246 F. App'x at 163. Likewise, the constitutional right Plaintiff claims was clearly established at the time of the incident, such that no reasonable officer could believe he could use the violent and repeated use of force alleged by Plaintiff and not be in violation of the constitution. Therefore, Defendants' motion shall

12

be denied to the extent that it seeks summary judgment in Defendant Broomall's favor on a theory of qualified immunity.

    c.   <u>Municipal liability.</u>

Defendants argue that they are entitled to summary judgment with respect to Plaintiff's claims against Defendant City of Bridgeton for municipal liability under <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978), because Plaintiff has failed to identify a municipal policy, practice, or custom of engaging in excessive force. (<u>See</u> Defs.' Br. [Docket Item 71-2], 10-17.) Plaintiff opposes this request. (<u>See</u> Pl.'s Opp'n [Docket Item 76], 7-8.) Plaintiff concedes that Defendant City of Bridgeton has officially implemented appropriate policies and concedes that her expert provides no opinion on whether the implementation of the policies is appropriate. (<u>Id.</u>) Plaintiff's only argument for <u>Monell</u> liability appears to be that Defendant Broomall has a larger-than-average number of use of force incidents, that this should have alerted Defendant City of Bridgeton that Defendant Broomall used excessive force, and that therefore Defendant City of Bridgeton was indifferent to Defendant Broomall's excessive force. (Id. at 8.) However, Plaintiff has not directed the Court to any evidence that Defendant Broomall's rate of use of force was so significantly higher that it was evidence that his use of force

was actually excessive force.[3] Such high frequency of use of force by Defendant Broomall, without further elaboration or citizens' complaints, does not give rise to an inference that he routinely uses <u>excessive</u> force, rather than being a result of his particular work assignments, or of other factors that lead Defendant Broomall to encounter a larger-than-average number of situations where there is a reasonable need to use force. At oral argument, Plaintiff conceded that she does not have any evidence with respect to <u>Monell</u> liability beyond that contained in her expert's report. The Court finds that this is insufficient. Plaintiff has failed to allege the existence of any policy, practice, or custom of the part of Defendant City of Bridgeton that acted as a cause of her alleged injuries at the hand of Defendant Broomall. Nor has Plaintiff provided any evidence that Defendant City of Bridgeton's (concededly appropriate) policies were poorly implemented or routinely ignored. Simply stated, the existence of an excessive force allegation does not, on its own, support a Monell action without evidence that the municipal entity engaged in behavior that encouraged or condoned such excessive force. Plaintiff has

---

[3] Indeed, Plaintiff has not directed the Court to any legal authority that stands for the proposition that a high frequency of the use of force by a police officer, without more, can justify the inference that the officer in question was exercising excessive force.

provided no such evidence here, therefore Defendants' motion with respect to Plaintiff's Monell claims will be granted.

       d.    <u>Whether New Jersey Civil Rights Act claims fail.</u> Defendants argue that Plaintiff's claim in Count III under the New Jersey Civil Rights Act must fail and rely on the same argument and reasoning that motivated their request for summary judgment with respect to Plaintiff's claim for excessive force under 42 U.S.C. § 1983, supra. (See Defs.' Br. [Docket Item 71-2], 18-19.) The parties agree that claims for excessive force brought under the NJCRA are functionally identical to claims for excessive force under 42 U.S.C. § 1983, as the NJCRA was modelled on Section 1983. (See id.; Pl.'s Opp'n [Docket Item 76], 8-9; compare 42 U.S.C. § 1983 with N.J. STAT. ANN. § 10:6-1, et seq.) The Court finds that these two statutes would require Plaintiff to prove the same facts to sustain her claim. As the Court has denied Defendants' motion with respect to Plaintiff's claim under 42 U.S.C. § 1983 as to Defendant Broomall, the Court shall do similarly with respect to Plaintiff's claim under the NJCRA. The Court shall grant summary judgment in favor of Defendants with respect to the remainder of Count III, as no evidence or argument has been presented by Plaintiff that she could sustain a claim under NJCRA against Defendant Riley.

       e.    <u>Plaintiff has not met the threshold to receive damages under the New Jersey Tort Claims Act.</u> Defendants argue

15

that Plaintiff has failed to meet the threshold requirement of suffering a "permanent loss of bodily function" necessary to pierce the NJTCA and receive damages under her state law claims. (Defs.' Br. [Docket Item 71-2], 20-33.) Defendants assert that Plaintiff's broken ankle, which has since healed and for which Plaintiff is not receiving any ongoing treatment, does not meet the permanency requirement and therefore, Plaintiff cannot receive damages as to any state law claims. (Id.) Plaintiff replies that the threshold inquiry is very fact intensive and therefore should be left for the jury to decide. (See Pl.'s Opp'n [Docket Item 76], 9.) However, the only case that Plaintiff cites in support of this argument pertained to a plaintiff who presented medical evidence that the plaintiff's spine was permanently damaged and caused ongoing pain. (Id. (citing Knowles v. Mantua Twp. Soccer Ass'n, 176 N.J. 324, 334 (2003)). Meanwhile, Defendants have directed the Court's attention to numerous cases that held that broken bones, including ankles, which later heal, are insufficient to pierce the NJTCA threshold's permanency requirement. Plaintiff has not cited a single case that would permit this Court to find that Plaintiff's healed ankle injury pierced this threshold. Plaintiff further conceded at oral argument that she is not prepared to present medical evidence or testimony regarding the extent, severity, or permanency of Plaintiff's injuries. Therefore, the Court finds that Plaintiff is unable to prove her injuries satisfy the

permanency requirement of the NJTCA and therefore Plaintiff is barred from seeking damages in this case under New Jersey state law.

   f.   <u>Assault and battery claim must fail.</u> Defendants further argue that they are entitled to summary judgment with respect to Plaintiff's claims for assault and battery against Defendant Broomall in Count IV, claiming that, among other reasons, Defendant Broomall is protected by a statutory immunity for police officers acting in good faith, N.J. STAT. ANN. § 59:3-3, and by the presumption in New Jersey state law that police officers are acting with ordinary caution and in good faith in executing their duties. (Defs.' Br. [Docket Item 71-2], 35 (citing <u>Amato v. United States</u>, 549 F. Supp. 863, 870 (D.N.J. 1982), <u>aff'd</u>, 729 F.2d 1445 (3d Cir. 1984)).) Plaintiff opposed this request in her brief, (<u>see</u> Pl.'s Opp'n [Docket Item 76], 9-10), but acknowledged at oral argument that overcoming New Jersey's immunity statute and presumption of good faith was a high burden and that Plaintiff did not have sufficient evidence in the record to overcome it. Additionally, the Court has determined, <u>supra</u>, that Plaintiff is unable to seek damages in this case with respect to any claim brought under New Jersey state law. Therefore, Defendants' motion shall be granted with respect to Plaintiff's claim for assault and battery.

   g.   <u>Punitive damages.</u> Defendants argue that they are entitled to summary judgment in their favor with respect to all

claims for punitive damages. (Defs.' Br. [Docket Item 71-2], 36-38.) Defendants contend that Defendant City of Bridgeton is immune from punitive damages for claims brought under 42 U.S.C. § 1983 and NJCRA. (Id. at 36 (citing City of Newport v. Fact Concerts Inc., 453 U.S. 247, 271 (1981), N.J. STAT. ANN. § 59:9-2(c)).) Plaintiff did not contest this assertion in her brief or at oral argument. The Court finds that, as a matter of law, Defendant City of Bridgeton cannot be held liable for punitive damages as a result of claims brought under under 42 U.S.C. § 1983 and NJCRA. Therefore, this portion of Defendants' motion shall be granted.

Defendants further assert that punitive damages may not be awarded against a public official in their official capacity. (Id. at 37 (citing Brandon v. Holt, 469 U.S. 464, 471-72 (1985)).) Again, Plaintiff did not contest this assertion in her brief or at oral argument. Therefore, the Court finds that, as a matter of law, Plaintiff cannot recover punitive damages from Defendants Broomall or Riley in their official capacity and this portion of Defendants' motion shall be granted.

With respect to punitive damages against the officers in their individual capacities, as a result of this Memorandum Opinion and the accompanying Order, there are no claims remaining against Defendant Riley, therefore that portion of Defendants' motion shall be dismissed as moot. With respect to Defendant Broomall in his individual capacity, Defendants assert that they are entitled

18

to summary judgment regarding punitive damages because Plaintiff has provided no evidence of Defendant Broomall's motive. (See id. at 37-38.) Plaintiff responds that a reasonable jury could find that Defendant Broomall's use of force against Plaintiff's neck was sufficiently reckless or indifferent to warrant punitive damages against him in his individual capacity. (Pl.'s Opp'n [Docket Item 76], 10-11.) As explained, supra, Plaintiff has active claims regarding excessive force under both 42 U.S.C. § 1983 and NJCRA, primarily flowing from Defendant Broomall's use of force against Plaintiff's neck. Taking the evidence in the light most favorable to Plaintiff, the Court finds that it is possible that a reasonable jury could find that Defendant Broomall's actions were sufficiently reckless or indifferent to warrant punitive damages against him in his individual capacity. Therefore, this portion of Defendants' motion will be denied.

6. **Conclusion.** For the reasons stated above, Defendants' motion for summary judgment [Docket Item 71] will be granted in part, denied in part, and dismissed as moot in part.

**March 29, 2019**                           **s/ Jerome B. Simandle**
Date                                        JEROME B. SIMANDLE
                                                        U.S. District Judge